Erik S. Johnson, ISB #4704
Idaho Legal Aid Services, Inc.
212 12th Avenue Road, Nampa, ID 83686
Phone: (208) 297-6986 | Fax: (208) 454-2593
Email: erikjohnson@idaholegalaid.org
*Attorney for Nolva Mendez, Plaintiff*

Howard Belodoff, ISB #2290
Email: howardbelodoff@idaholegalaid.org
*Attorney for Nolva Mendez, Plaintiff*

Brooke Roberts, ISB #10765
Email: brookeroberts@idaholegalaid.org
*Attorney for Nolva Mendez, Plaintiff*

Erika Birch, ISB #7831
Strindberg & Scholnick, LLC
1516 W. Hays Street, Boise, ID 83702
Phone: (208) 336-1788, ext. 210 | Fax (208) 287-3708
Email: erika@idahojobjustice.com
*Attorney for Nolva Mendez and Carlos Castillo, Plaintiffs*

Kathryn Harstad, ISB #8419
Email: kass@utahjobjustice.com
*Attorney for Nolva Mendez and Carlos Castillo, Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **Nolva Mendez Perez and Carlos Castillo Aragon**<br><br>Plaintiffs<br><br>v.<br><br>**The Monty and Carolene Funk Partnership DBA County Line Farms, Monty Funk DBA County Line Farms, and Unnamed Corporate Defendants**<br><br>Defendants | **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**Case No.: 4:21-cv-00167-DCN**<br><br>**Judge: David C. Nye** |

Amended Complaint and Demand for Jury Trial - Page 1

Nolva Mendez Perez ("Mendez") and Carlos Castillo Aragon ("Castillo") (collectively "Plaintiffs") bring this action against the Monty and Carolene Funk Partnership DBA County Line Farms, Monty Funk DBA County Line Farms, and Unnamed Corporate Defendants ("Defendants"), by and through their undersigned attorneys and allege as follows:

## PRELIMINARY STATEMENT

1.      This is an action for damages brought on behalf of the Plaintiffs.  Plaintiffs are married to each other.  Plaintiffs were employed by Defendants to work in their potato cellar and farm, where Plaintiff Mendez was subjected to sexual harassment and sexual assault.  Plaintiff Mendez seeks damages under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), Title I of the Civil Rights Act of 1991 (42 U.S.C. § 1981a), and the Idaho Human Rights Act (I.C. § 67-5909 *et seq.*), and she seeks damages for the negligent infliction of emotional distress for Defendants' unlawful conduct in retaliating against her for opposing the unlawful conduct.   Plaintiff Castillo seeks damages under these same statutes for retaliation, and he seeks damages for the negligent infliction of emotional distress for Defendants' unlawful conduct in retaliating against him for his wife's actions in opposing the unlawful conduct.

## PARTIES

2.      Plaintiffs are residents of Idaho.

3.      At all times relevant to this complaint both Plaintiffs were "employees" of County Line Farms within the meaning of §701(f) of Title VII.

4.      The Defendant Monty and Carolene Funk Partnership DBA County Line Farms is a partnership registered in the State of Idaho and is doing business as County Line Farms.

5.      The Defendant Monty Funk DBA County Line Farms was listed as the Respondent in Respondent's filings regarding this discrimination complaint before the Idaho Human Rights Commission.

6.      Unnamed Corporate Defendants are any business entities that own or operate County Line Farms.

7.      County Line Farms is headquartered at 2248 County Line Road in American Falls, Idaho 83211.

8.      At all times relevant to this complaint, Defendants employed fifteen or more employees.

9.      At all times relevant to this complaint, Defendants were involved in the growing, sorting, and storing of potatoes for interstate commerce.

10.     At all times relevant to this complaint, Defendants were an "employer" for purposes of 42 U.S.C. § 2000e(b).

11.     At all times relevant to this complaint, Defendants have been employers engaged in an industry affecting commerce within the meaning of §§ 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## JURISDICTION AND VENUE

12.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1343 and pursuant to 42 U.S.C. §§ 2000e-5(f)(3).

13.     Plaintiffs respectfully request that this Court exercise its 28 U.S.C. § 1367 supplemental jurisdiction over Plaintiffs' claims arising under state law as these claims are so related to the federal claims that they form part of the same case or controversy.

14.     Personal jurisdiction over Defendants is proper because they are domiciled in the District of Idaho and because this case arises from Defendants' wrongful conduct in Idaho.

15.     Venue in the District of Idaho is proper pursuant to 28 U.S.C § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and L.R. 3.1.  All the employment practices alleged to be unlawful were committed within the District of Idaho.

## EXHAUSTION OF REMEDIES AND RIGHT TO SUE

16.     Plaintiff Mendez filed a timely Charge of Discrimination with the Idaho Human Rights Commission ("IHRC") and the Equal Employment Opportunity Commission ("EEOC") on May 22, 2019.  Plaintiff Mendez filed a second Charge of Discrimination with the IHRC and the EEOC on March 4, 2020, for subsequent acts of retaliation against her and her husband.

17.     Included with Plaintiff Mendez's second Charge was an affidavit from Plaintiff Castillo detailing the retaliation by Defendants in firing him in November of 2019 and evicting the family from worker housing.

18.     On December 4, 2020, the EEOC and IHRC issued a determination on Plaintiff Mendez's Charges and found that there was probable cause to believe that illegal discrimination and retaliation occurred.

19.     Plaintiff Mendez began the conciliation process with the IHRC to attempt resolution of the charges.  Defendants also began the conciliation process but shortly thereafter decided not to participate in the conciliation process.

20.     For Plaintiff Mendez, the IHRC issued its Case Dismissals and Notices of Right to Sue on the two Charges of Discrimination on January 25, 2021.  The EEOC issued its Notices of Right to Sue on March 15, 2021.  Plaintiffs filed this action within ninety days of the IHRC and EEOC issuing the Notices of Right to Sue to Mendez.  Plaintiff Mendez has exhausted all administrative remedies within the meaning of Title VII.

21.     Plaintiff Castillo filed his own Charge of Discrimination with the IHRC on December 22, 2020.   On April 29, 2021, the IHRC issued a determination on Plaintiff Castillo's Charge and found that there was probable cause to believe that illegal retaliation occurred with respect to the eviction from employer housing on December 26, 2019.

22.     Plaintiff Castillo declined to participate in the IHRC conciliation process.

23.     For Plaintiff Castillo, the IHRC issued its Case Dismissal and Notice of Right to Sue on his Charge of Discrimination on May 4, 2021. Less than ninety-days have elapsed since the IHRC issued the Notice of Right to Sue to Castillo.  Plaintiff Castillo has exhausted all administrative remedies within the meaning of the IHRA on his retaliation claim for eviction from employer housing.

24.     Plaintiff Castillo is similarly situated to Plaintiff Mendez in having suffered retaliation based on the exact same circumstances during the same time period as outlined in Plaintiff Mendez's second Charge supported by his affidavit, putting County Line Farms on notice of Plaintiff Castillo's retaliatory firing and eviction claims.  Accordingly, this Court has jurisdiction over his federal and state law claims regarding his retaliatory firing and eviction under the Single Filing Rule.

**ALLEGATIONS REGARDING PLAINTIFF MENDEZ**

25.     Plaintiff Mendez worked seasonally at County Line Farms from the fall of 2013 to the fall of 2018, except for spring of 2014 after she had a child and during 2016 when she lived in another state.  Work typically began in February or March and finished in October or November.

26.     Plaintiff Mendez's last day of work for County Line Farms was Sunday, October 7, 2018.

27.     Throughout her employment Plaintiff Mendez performed various duties, such as cutting potatoes for seed, picking rocks in the fields, and cleaning potatoes during the harvest.

28.     During the fall season, her responsibility was to operate the piler, which is the last piece of equipment inside the cellar that transfers potatoes into piles for storage.  She also picked rock in the fields in November for some of the years.

29.     For all but one year when Plaintiff Mendez worked at County Line Farms, her supervisor in September and October was Jesus Rosales.

30.     Mr. Rosales supervised Plaintiff Mendez and about fifteen to twenty other workers.

31.     Plaintiff Mendez had a different supervisor, Guadalupe Cardona, for the rest of the year.

32.     Mr. Rosales, as a supervisor, oversaw workers and operations at County Line Farms and had the ability to influence Defendants' decisions as to the hiring and firing of workers, the assigning of jobs to the workers, and the recalling of workers to work for the following season.

33.     Mr. Rosales had the ability to reprimand employees, control or deny workers' breaks, and record their work hours.

34.     Mr. Rosales sexually harassed Plaintiff Mendez at the workplace on a daily basis during the four fall seasons when she worked under his supervision between 2013 and 2018.

35.     Mr. Rosales started to sexually harass her within one week of her beginning to work under his supervision in the fall 2013.

36.     Mr. Rosales began making statements to Plaintiff Mendez that had a double meaning.

37.     At first, Plaintiff Mendez tried to pretend that she did not understand because she did not know how to reply.

38.     Mr. Rosales's statements made during the course of Plaintiff Mendez's employment included but were not limited to: "You have such a good ass," "Do you like having sex a lot with your husband?," and "Why are you with [your husband] if he is ugly?"

39.     Plaintiff Mendez asked Mr. Rosales to stop and to "please show some respect and do not ask those things about my intimacy."

40.     Mr. Rosales would not listen when Plaintiff Mendez would ask him to stop harassing her.

41.     When Plaintiff Mendez would get upset because of Mr. Rosales's comments to her, Mr. Rosales would further harass her by asking, for example, "Why do you come to work angry?" Plaintiff Mendez would tell Mr. Rosales to leave her alone, and he would continue, "Did your husband climb on top of you last night?" or "Did he not take the urge away?  I will take the urge away."  On other occasions, when Plaintiff Mendez objected to Mr. Rosales's conduct, he would laugh and say, "Why do you get angry?" and "You play hard to get."

42.     Mr. Rosales would follow Plaintiff Mendez around the potato cellar and make harassing comments.  She had to watch her back continuously and she was uncomfortable when Mr. Rosales was around.

43.     Other employees witnessed the sexual harassment but no one spoke up.

44.     Plaintiff Mendez was pregnant during the fall of 2013 and Mr. Rosales made lewd remarks to her about how she got pregnant.

45.     For one of the fall seasons after 2013, Plaintiff Mendez was assigned to work under the supervision of Mr. Guadalupe Cardona instead of Mr. Rosales.

46.     For another fall season after 2013, she requested that she be allowed to work under the supervision of Mr. Cardona instead of Mr. Rosales, but her request was denied.

47.     At some point prior to 2016, Plaintiff Mendez told a friend, Rosa Rosales, about the sexual harassment.  Ms. Rosales had worked at County Line Farms for several years prior to 2016.

48.     At some point prior to 2016, she also told her husband, Plaintiff Castillo, that Mr. Rosales was sexually harassing her.

49.     During the fall of 2017, when Plaintiff Mendez was six months pregnant, Mr. Rosales told her, "You look even hotter [pregnant].  Your breasts are bigger and you have more of a bubble butt."

50.     Another female employee was present and heard Mr. Rosales's remarks.  This employee told Plaintiff Mendez, "That man is crazy.  He is being disrespectful to you and your baby.  He goes overboard."

51.     When Mr. Rosales continued to make such harassing comments, Plaintiff Mendez continued to tell him that his comments were offensive and asked him to stop.  However, the harassment continued.

52.     During the fall of 2018, Mr. Rosales continued to sexually harass Plaintiff Mendez.  She asked Mr. Rosales to stop making offensive comments so often that she lost track of how many times she asked him to be respectful.

53.     At one point that fall, Mr. Rosales told Plaintiff Mendez, "I want to touch your butt to see if it is the real thing."  Plaintiff Mendez told Mr. Rosales "not to even think about it" and that she had "never given him a reason" to behave that way.

54.     Then, on Thursday, October 4, 2018, Mr. Rosales sexually assaulted Plaintiff Mendez on the job.

55.     At approximately 2:40 p.m. that day, Plaintiff Mendez was working in the potato cellar.  She was using a remote control to operate the piler to stack potatoes.

56.     Plaintiff Mendez was on the stairs along the cellar wall, in a remote area of the cellar several hundred feet from the conveyor belt where there were other workers.

57.     Plaintiff Mendez was talking on the phone with a friend, Reynaldo Solis, using headphones, and she did not hear Mr. Rosales approach her from behind.

58.     Mr. Rosales grabbed her right buttock, squeezed it hard, and then gave it a slap.

59.     As he assaulted her from behind, Mr. Rosales pressed his body against her until he was nearly on top of her, knocking her to her knees.

60.     Plaintiff Mendez became upset and started crying.  She yelled at Mr. Rosales, "What have you done?" and "Why?"

61.     Mr. Rosales replied, "Did you like it?  I like.  If you'd like, I'll do it again.  They are real nice."

62.     Plaintiff Mendez was extremely frightened and felt degraded by Mr. Rosales's assault.

63.     Mr. Rosales is significantly older, larger, and stronger than Plaintiff Mendez.

64.     Plaintiff Mendez was isolated in a remote area of the cellar and feared that Mr. Rosales would overpower her.

65.     When Plaintiff Mendez became upset, Mr. Rosales told her she needed to go on break.

66.      Plaintiff Mendez refused, threw the remote control at Mr. Rosales and said she was leaving.

67.     Mr. Rosales left the area where the sexual assault occurred and began telling other employees that whatever Plaintiff Mendez was going to say was not true.

68.     Plaintiff Mendez reported to work on the two days following the assault, Friday, October 5, and Saturday, October 6, 2018.

69.     Plaintiff Mendez had to work a full shift both days after the sexual assault because her family was dependent on her income.

70.     On Saturday, October 6, 2018, Mr. Rosales did not allow Plaintiff Mendez meal or bathroom breaks for the entire day, and she could only leave the piler for very brief periods of five or ten minutes at a time when there was a break with the potatoes moving up through the machine.

71.     Plaintiff Mendez made repeated requests to take a break but Mr. Rosales denied her requests.

72.     Plaintiff Mendez told Mr. Rosales that she was upset about the lack of breaks and lunchtime and that she did not agree to work under those adverse conditions.

73.     Plaintiff Mendez was reluctant to work on the morning of Sunday, October 7th.  Not only was she still extremely upset about the sexual harassment and sexual assault, but she did not want to work under the hostile conditions (e.g., denying breaks) that Mr. Rosales seem intent on subjecting her to.

74.     Plaintiff Mendez decided not to go into work, but then changed her mind and consequently arrived ten minutes late.

75.     Mr. Rosales's son-in-law, known as "El Pollo," was already working on the piler, Plaintiff Mendez's assigned position, so she began working on the conveyor belt instead.

76.     Mr. Rosales reprimanded Plaintiff Mendez for being late when she arrived.

77.     Mr. Rosales approached her and said, in Spanish, "What the fuck are you doing here?  You said you didn't want to come to work because you are lazy, so what the fuck did you come in for?  You are getting paid, after all, so I don't know why you don't want to come to work."

78.     Plaintiff Mendez responded to Mr. Rosales by stating: "Excuse me.  Why don't I want to come to work?"  As he walked away from the belt she stated, "Listen to me.  Why don't I want to come to work?  Why are you calling me lazy when you know exactly why I didn't want to come back to work?"

79.     Mr. Rosales asked, "Why?" and Plaintiff Mendez replied, "You really don't know why?"  Mr. Rosales responded, "No."

80.     Plaintiff Mendez responded, "Of course you know why—because of what you did to me."

Amended Complaint and Demand for Jury Trial - Page 10

81.     Mr. Rosales replied, "What did I do to you, according to you?"

82.     Plaintiff Mendez replied, "You know what you did.  You grabbed me by the butt."

83.     Mr. Rosales laughed and said, "What are you going to do about it?"

84.     Plaintiff Mendez replied, "I don't know.  Maybe I will go to the police.  Or go to your wife."

85.     Mr. Rosales replied, "Who is going to believe you, if you are no one?  Remember you live in employer housing and you are illegal.  If you say something it will be your word against mine."

86.     Plaintiff Mendez understood that Mr. Rosales was telling her he had the authority to influence the employer's decision making as to firing her, not recalling her for the following season, and evicting her and her family from employer housing.

87.     Plaintiff Mendez was so upset she wanted to leave immediately but remembered she had not recorded her work hours for the previous day.

88.     Plaintiff Mendez asked Mr. Rosales for the notebook where work hours were recorded and as she wrote her time for the night before and returned the notebook, Mr. Rosales told her, "Think very carefully about what you are going to do."

89.     Plaintiff Mendez returned to her car and drove home.

90.     Plaintiff Mendez did not return to work on Monday, October 8th as she was to upset about the sexual harassment, sexual assault, and the threats to her employment and housing should she chose to complain.

91.     The season ended for Plaintiff Mendez and her crew on Monday, October 8th.

92.     Plaintiff Mendez decided to report the sexual assault and harassment to the management of County Line Farms after the fall season ended.

93.     In November 2019 Plaintiff Mendez asked a former County Line Farms employee and friend, Rosa Rosales, to call County Line Farms management and arrange a meeting so she could make a complaint about the sexual harassment and sexual assault.

94.     Plaintiff Mendez had previously told Rosa Rosales about the sexual harassment she experienced at County Line Farms, and she told her about the assault.

95.     Plaintiff Mendez does not speak English and Rosa Rosales speaks English and Spanish. Rosa Rosales is not related to Jesus Rosales.

96.     On November 14, 2018, Rosa Rosales called County Line Farms on Plaintiff Mendez's behalf.

97.     Plaintiff Mendez was not present with Rosa Rosales, nor was she connected by conference call when Ms. Rosales made the phone call.

98.     Rosa Rosales was not interpreting Plaintiff Mendez's statements in real time.  She was calling on Mendez's behalf to communicate her request for a meeting with the County Line Farms management.

99.     Rosa Rosales told the secretary, Beth Curry, that Mr. Rosales had sexually assaulted Plaintiff Mendez two days before the end of the 2018 harvest.

100.    Rosa Rosales also told Ms. Curry about the constant sexual harassment.  Beth Curry recorded notes from the conversation.

101.    Rosa Rosales explained that Plaintiff Mendez did not work the last day of harvest because of the sexual assault.

102.    Ms. Curry informed Rosa Rosales that she was going to arrange a meeting to resolve the issue.

Amended Complaint and Demand for Jury Trial - Page 12

103.   Ms. Curry told Rosa Rosales that Plaintiff Mendez should not come to the office because it would look suspicious.

104.   Ms. Curry told Rosa Rosales that County Line Farms did not want a scandal and that Plaintiff Mendez should keep quiet about the matter and not tell anyone, including her husband, Plaintiff Castillo.

105.   Ms. Curry said that County Line Farms would take care of the problem.

106.   Rosa Rosales told Ms. Curry that Plaintiff Mendez did not want her name disclosed to Mr. Rosales because she wanted to return to work the following spring and feared retaliation from Mr. Rosales.

107.   On November 16, 2018, Ms. Curry contacted Rosa Rosales and asked for additional details about the sexual harassment and sexual assault.

108.   Rosa Rosales told Ms. Curry details of the sexual assault as she understood them and relayed that Mr. Rosales had threatened Plaintiff Mendez's job if she reported the sexual assault.

109.   During this conversation with Ms. Curry, Rosa Rosales also reported that Mr. Rosales had asked many female workers for sex, according to Plaintiff Mendez.

110.   Ms. Curry told Rosa Rosales that her bosses were going to take care of the problem because this was not the first time this had happened with Mr. Rosales.

111.   Ms. Curry stated that Mr. Rosales would be spoken to and his bonuses would be taken away.

112.   Defendants conducted a cursory investigation and only spoke with Mr. Rosales; Plaintiff Mendez's spring crew supervisor, Mr. Guadalupe Cardona; and another male employee, David Gutierrez, who worked in connection with both Mr. Rosales and Plaintiff Mendez.

113.   Mr. Rosales denied that he sexually harassed or sexually assaulted Plaintiff Mendez.

114.    Mr. Cardona and Mr. Gutierrez denied that they knew about any sexual harassment or sexual assault.

115.    Defendants did not interview Plaintiff Mendez, any of the female workers who Mr. Rosales supervised, nor any other female employee regarding Mr. Rosales's behavior.

116.    Plaintiff Mendez was not offered a meeting with County Line Farms management to discuss her complaint.

117.    All communications regarding her complaint came through the two telephone calls between Ms. Curry and Rosa Rosales.

118.    Defendants took no disciplinary action against Mr. Rosales for the sexual harassment and sexual assault.

119.    Defendants continued to employ Mr. Rosales after Plaintiff's complaint in November 2018.

120.    Defendants awarded Mr. Rosales a bonus in 2018 and pay increases in early 2019.

121.    Mr. Rosales was also promoted in the spring of 2019 and given additional responsibilities.

122.    During Plaintiff Mendez's employment with County Line Farms, she was never provided with a copy of a sexual harassment policy and was never informed of any sexual harassment policies.

123.    Plaintiff Mendez never received any training regarding sexual harassment, nor was she ever told how to make a complaint if she suffered sexual harassment.

124.    Plaintiff Mendez performed all her required duties during all times she was employed at County Line Farms.  She was never reprimanded or disciplined.

125.    County Line Farms had a practice of rehiring the women who had worked in previous years.

126.    Plaintiff Mendez was recalled each year from 2013 to 2018, except for in 2016 when she and her family lived in another state.  Additionally, she and her husband, Plaintiff Castillo, and their family lived in employer-provided housing.

127.    Early each spring or late winter the workers at County Line Farms were recalled to work for the spring season.

128.    County Line Farms never told her, during the November 2018 phone calls between Rosa Rosales and Beth Curry, or anytime thereafter, that she would not be recalled due to missing the last day of the 2018 harvest or for any other reason.

129.    Plaintiff Mendez did not receive a call to return to work in February 2019.

130.    Plaintiff Mendez's husband, Plaintiff Castillo, also an employee of County Line Farms, returned to work in February 2019 after his regular winter break of several weeks.

131.    As he returned to work that spring, Plaintiff Castillo became aware that other employees were talking about Plaintiff Mendez's complaint against Mr. Rosales

132.    In March 2019, Plaintiff Castillo told Plaintiff Mendez that the other female employees from Plaintiff Mendez's crew had been recalled to work.

133.    In March 2019, Plaintiff Castillo asked Plaintiff Mendez's regular spring crew supervisor Guadalupe Cardona why Plaintiff Mendez had not been recalled to work.

134.    Guadalupe Cardona told him to ask the secretary.  When he asked the secretary, she told him to go back to Guadalupe Cardona to find out.

135.    Plaintiff Castillo went back to Guadalupe Cardona, who told him that the secretary was crazy, and that he had nothing to do with filling crews.

136.    However, Guadalupe Cardona was, in fact, one of the people authorized to compile the list of people who were wanting to work for the next season.

137.    Plaintiff Castillo was later told that Plaintiff Mendez was not recalled because she had complained about Mr. Rosales.

138.    On March 15, 2019, Plaintiff Mendez communicated via text with Gary Funk.

139.    Gary Funk is a manager at County Line Farms and is the cousin of Monty Funk, co-owner of County Line Farms.

140.    Plaintiff Mendez asked Gary Funk if she was on the list for work as she had heard that the other workers were starting on Monday, March 18, 2019.

141.    Gary Funk told Plaintiff Mendez that she would not be recalled.  He explained that Defendants had cut back the number of female workers for seed cutting that season and other women who had previously been employed were not being recalled either.

142.    Gary Funk stated that another farmer named Lance needed help cutting seed.  He was referring to Lance Funk, Defendant Monty Funk's brother.

143.    Plaintiff Mendez later learned that all the women on her crew from the fall of 2018 were recalled except for her.

144.    On March 25, 2019, Plaintiff Mendez made a written voluntary statement to the American Falls Police Department detailing Mr. Rosales's sexual harassment and assault.

145.    Plaintiff Mendez began looking for work right after Defendants told her they were not recalling her to work.

146.    On April 10, 2019, Plaintiff Mendez spoke with Dunnia Aplicano at the Idaho Department of Labor about the sexual harassment, sexual assault, and retaliation.

147.    Ms. Aplicano filed an Apparent Violation against the employer with the Idaho Department of Labor on Plaintiff Mendez's behalf.

148.    Ms. Aplicano also forwarded the Apparent Violation to the IHRC that same day.

149.    On May 22, 2019, Plaintiff Mendez filed her formal Charge of Discrimination with the IHRC.

150.    As set forth further below, Plaintiff Mendez filed a second Charge of Discrimination with the IHRC on March 4, 2020, based on further retaliation against her and her husband.

151.    Plaintiff Mendez has suffered from severe emotional distress as a result of the sexual harassment, sexual assault, and retaliation.  The severe emotional distress has resulted in physical manifestations.

## ALLEGATIONS REGARDING PLAINTIFF CASTILLO

152.    Plaintiff Castillo was a year-round employee of County Line Farms from 2010 to 2019, except for 2016 when he lived in another state.  Plaintiff Castillo's last day of work for County Line Farms was November 26, 2019.

153.    Plaintiff Castillo worked year-round except for a few weeks' break he received each winter around Christmas.

154.    On November 26, 2019, Defendants fired Plaintiff Castillo.  On that day, Tyson Funk called Plaintiff Castillo into a meeting with Castillo's supervisor, Dolores Rangel.

155.    Tyson Funk is the son of the owner Monty Funk and is a manager at County Line Farms.

156.    Mr. Funk does not speak Spanish and Plaintiff Castillo does not speak English well, although Mr. Castillo was able to understand what Mr. Funk was saying in English.  Mr. Rangel interpreted for Mr. Funk and Plaintiff Castillo.

157.    Mr. Funk told Plaintiff Castillo the season was over and they would not recall him the next season.

158.    Mr. Funk thanked Plaintiff Castillo for the work he had performed and said Plaintiff Castillo was a very good worker.

159.    Mr. Funk stated he was sorry, but Defendants could not recall Plaintiff Castillo because of the problems the company was having because of his wife.

160.    Although Plaintiff Castillo's spoken English is poor, he understood Mr. Funk's statement in English that they were not recalling him because of his wife's complaint.  Mr. Rangel then confirmed Mr. Funk's statement to Plaintiff Castillo in Spanish.

161.    Mr. Funk informed Plaintiff Castillo that he and Plaintiff Mendez had one week to vacate the employer-provided housing where they lived with their three children.

162.    On December 1, 2019, Plaintiff Mendez contacted Tyson Funk via text and asked if Plaintiffs' family could have until January 1, 2020 to move out because it was very difficult to find affordable housing in the area at that time.  Mr. Funk agreed to let them stay until January 1. Plaintiffs' family moved out on December 26, 2019.

163.    Plaintiff Mendez contacted the IHRC about these subsequent acts of retaliation whereby the employer fired her husband and evicted her entire family from employer housing.

164.    After receiving an affidavit from Plaintiff Castillo regarding the retaliation, Plaintiff Mendez filed a second Charge of Discrimination with the IHRC and EEOC on March 4, 2020.  At that point, Defendants were on clear notice regarding these allegations of retaliation, which included the firing of Plaintiff Castillo and the eviction of the family from employer housing.

165.    Plaintiff Castillo has also suffered from severe emotional distress as a result of the retaliation against him.  The severe emotional distress has resulted in physical manifestations.

## FIRST CLAIM FOR RELIEF FOR PLAINTIFF MENDEZ

### (Hostile Work Environment in Violation of Title VII of the
### Civil Rights Act and the Idaho Human Rights Act)

166.    Plaintiffs incorporate by reference and reallege all the preceding paragraphs of this complaint as though fully set forth herein.

167.    Plaintiff Mendez, a female, is a member of a protected class under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*., and the Idaho Human Rights Act, I.C. § 67-5909 *et seq.*

168.    Defendants discriminated against Plaintiff Mendez in violation of 42 U.S.C. § 2000e-2(a), by subjecting her to sexual harassment and by creating, maintaining and condoning a hostile work environment.

169.    Defendants' treatment of Plaintiff Mendez was unwelcome.  Plaintiff Mendez informed Mr. Rosales on numerous occasions that his behavior was unwelcome.

170.    The offensive sexual conduct to which Plaintiff Mendez was subjected occurred frequently and on a routine basis over a period of five years.

171.    The offensive sexual conduct culminated in a sexual assault.

172.    This treatment was so severe and/or pervasive that it altered the conditions of Plaintiff Mendez's employment and had an adverse impact on Plaintiff Mendez's working environment.

173.    Defendants are vicariously liable for the hostile work environment created by its supervisor Jesus Rosales.

174.    Alternatively, the Defendants knew or should have known about the sexual harassment yet they failed to take effective remedial action.

175.    Plaintiff Mendez complained to the Defendants about the harassment yet Defendants took no action to remediate the harassment.

Amended Complaint and Demand for Jury Trial - Page 19

176.    Upon information and belief, Defendants also knew about prior allegations of sexual harassment against Mr. Rosales yet took no actions to remediate the harassment.

177.    As a result, Plaintiff Mendez suffered injuries and is entitled to damages for lost compensation and benefits as well as compensation for severe emotional distress.

178.    Defendants' unlawful employment practices described above were undertaken with malice or reckless indifference to Plaintiff Mendez's federally protected rights, and Defendants should be subjected to punitive damages.

## SECOND CLAIM FOR RELIEF FOR PLAINTIFF MENDEZ

### (Retaliation in Violation of Title VII of the Civil Rights Act of 1964 and the Idaho Human Rights Act)

179.    Plaintiffs incorporate by reference and reallege all the preceding paragraphs of this complaint as though fully set forth herein.

180.    Defendants' unlawful employment practices taken against Plaintiff Mendez constitute retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a) and the Idaho Human Rights Act, I.C. § 67-5909 *et seq.*

181.    Plaintiff Mendez engaged in a protected activity when she opposed the offensive sexual conduct of Mr. Rosales by telling Rosales directly to stop and by reporting the sexual conduct to the Defendants.

182.    She also engaged in protected activity when she filed her Charge of Discrimination with the IHRC/EEOC and a police report regarding Mr. Rosales's assault.

183.    Not only was the appropriate action not taken in response to Plaintiff Mendez's complaints but Plaintiff Mendez suffered materially adverse actions as a result of opposing Mr. Rosales's conduct.

184.    These adverse actions include continued and escalating harassment by Mr. Rosales; termination of her employment/failure to recall her in the spring of 2019 after opposing and complaining of sexual harassment; termination of her husband Plaintiff Castillo's employment on November 26, 2019; and the eviction of the entire family from employer-provided housing on December 26, 2019.

185.    These adverse actions would discourage a reasonable employee from reporting discrimination.

186.    As a result of the retaliation, Plaintiff Mendez suffered injuries and is entitled to damages for lost compensation and benefits as well as compensation for severe emotional distress.

187.    The retaliatory actions taken toward Plaintiff Mendez described above were undertaken with malice or reckless indifference to the federally protected rights of Plaintiff Mendez, and Defendants should be subjected to punitive damages.

### THIRD CLAIM FOR RELIEF FOR PLAINTIFF MENDEZ

**(Negligent Infliction of Emotional Distress)**

188.    Plaintiffs incorporate by reference and reallege all the preceding paragraphs of this complaint as though fully set forth herein.

189.    Defendants owed Plaintiff Mendez a legal duty not to retaliate against her on the basis of her gender discrimination complaint pursuant to Title VII of the Civil Rights Act and the Idaho Human Rights Act.

190.    Defendants breached their legal duty when they retaliated against Plaintiff Mendez for making her complaints by firing her husband, Plaintiff Castillo, and evicting the entire family from employer-provided housing in November of 2019.

191.   Defendants foreseeably caused Plaintiff Mendez severe and substantial emotional distress by retaliating against her and her family for engaging in a protected activity.

192.   Defendants' conduct foreseeably caused Plaintiff Mendez's severe emotional distress, which has resulted in physical manifestations.

193.   Plaintiff Mendez is entitled to recover damages arising from this emotional distress, including medical bills, counseling bills, loss of future earning capacity, pain and suffering, and other general damages.

## FIRST CLAIM FOR RELIEF FOR PLAINTIFF CASTILLO

### (Retaliation in Violation of Title VII of the
### Civil Rights Act of 1964 and the Idaho Human Rights Act)

194.   Plaintiffs incorporate by reference and reallege all the preceding paragraphs of this complaint as though fully set forth herein.

195.   Defendants' unlawful employment practices taken against Plaintiff Castillo constitute retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a) and the Idaho Human Rights Act, I.C. § 67-5909 *et seq.*

196.   Plaintiff Castillo's wife, Plaintiff Mendez, engaged in a protected activity when she opposed the offensive sexual conduct of Mr. Rosales by telling Rosales directly to stop and by reporting the sexual conduct to the Defendants.

197.   As a result of Plaintiff Mendez's opposing the offensive sexual conduct, Plaintiff Castillo suffered an adverse employment action when Defendants fired him on November 26, 2019, and evicted his entire family from employer-provided housing on December 26, 2019.

198.   These retaliatory acts occurred even after Plaintiff Mendez made her complaint to the Idaho Human Rights Commission.

199.    These adverse actions would discourage a reasonable employee from reporting discrimination.

200.    As a result of the retaliation, Plaintiff Castillo suffered injuries and is entitled to damages for lost compensation and benefits as well as compensation for severe emotional distress.

201.    The retaliatory actions toward Plaintiff Castillo described above were undertaken with malice or reckless indifference to the federally protected rights of Plaintiff Castillo, and Defendants should be subjected to punitive damages.

## SECOND CLAIM FOR RELIEF FOR PLAINTIFF CASTILLO

### (Negligent Infliction of Emotional Distress)

202.    Plaintiffs incorporate by reference and reallege all the preceding paragraphs of this complaint as though fully set forth herein.

203.    Defendants owed Plaintiff Castillo a legal duty not to retaliate against him on the basis of Plaintiff Mendez's gender discrimination complaint pursuant to Title VII of the Civil Rights Act and the Idaho Human Rights Act.

204.    Defendants breached their legal duty when they retaliated against Plaintiff Castillo by firing him on November 26, 2019, and evicting him and his family from employer-provided housing on December 26, 2019.

205.    Defendants foreseeably caused Plaintiff Castillo severe and substantial emotional distress by retaliating against him and his family for engaging in a protected activity.

206.    Defendants' conduct foreseeably caused Plaintiff Castillo's severe emotional distress, which has resulted in physical manifestations.

207.    Plaintiff Castillo is entitled to recover damages arising from this emotional distress, including loss of future earning capacity, pain and suffering, and other general damages.

## DEMAND FOR JURY TRIAL

208.     Plaintiffs demand a trial by jury pursuant to Fed. R. of Civ. P. 38, U.S. Const. Amendment VII, and Idaho Const. Art. I, § 7 for all claims and all issues related to liability and damages.

## PRAYER FOR RELIEF

Plaintiffs respectfully pray for judgment against Defendants as follows:

1.      For money judgment against Defendants as compensation for all past and future lost income, and other special and general damages sustained by Plaintiffs which will be proven at trial;

2.      For compensatory and consequential damages for emotional pain, suffering, inconvenience, mental anguish, and lost enjoyment of life in an amount to be determined at the trial;

3.      For all rights and remedies available at law provided by Title VII, 42 U.S.C. § 1981a, and the Idaho Human Rights Act, including actual damages, compensatory damages, and equitable relief including, but not limited to, front pay in lieu of reinstatement, punitive damages, and attorneys' fees;

4.      Punitive damages for Defendants' malicious or reckless conduct under federal law;

5.      For pre-judgment and post-judgment interest pursuant to I.C. § 28-22-104 and 28 U.S.C. § 1961;

6.      Monetary compensation for any additional tax liability incurred because of lump-sum judgment or other remuneration recovered;

7.      Injunctive and/or declaratory relief;

8.      Attorney fees, litigation expenses and costs, and expert fees; and

9.      For such other and further relief as the Court deems just and equitable.

Amended Complaint and Demand for Jury Trial - Page 24

Dated this 19th day of May, 2021.

IDAHO LEGAL AID SERVICES, INC.                STRINDBERG & SCHOLNICK, LLC


/s/ Erik S. Johnson                           /s/ Erika Birch
Erik S. Johnson, ISB No. 4704                 Erika Birch, ISB No. 7831
Attorney for Plaintiff Nolva Mendez           Attorney for Plaintiffs